**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Laura A. Morgan,<br><br>    Plaintiff,<br><br>vs.<br><br>Michael J. Astrue, Commissioner of Social Security,<br><br>    Defendant. | No. CIV 07-345-TUC-DCB (GEE)<br><br>**REPORT AND RECOMMENDATION** |

      The plaintiff filed this action for review of the final decision of the Commissioner for Social Security pursuant to 42 U.S.C. §1383(c)(3). The case has been referred to the United States Magistrate Judge pursuant to the Rules of Practice of this court.

      Pending before the court is a motion for summary judgment filed by the plaintiff on November 1, 2007, and a cross-motion for summary judgment filed by the defendant on November 17, 2007. [#10, 12][1] The plaintiff filed a combined response and reply on December 17, 2007.

      The Magistrate Judge recommends that the District Court, after its independent review, grant the plaintiff's motion for summary judgment, deny the defendant's cross-motion, and remand for payment of benefits. The ALJ's conclusion that Morgan can return to work as a ranch hand is not supported by the record.

---

[1] Clerk's record number.

PROCEDURAL HISTORY

In January of 2003, Morgan filed an application for supplemental security income benefits alleging disability due to "bi-polar, manic depressive, panic disorder, borderline personality." (Tr. 40, 73-74). The Social Security Administration (SSA) denied her application in April of 2003. (Tr. 40). Morgan did not ask for reconsideration.

In August of 2003, Morgan filed another application for supplemental security income benefits alleging disability due to "bi-polar diagnosis, symptoms of extreme anxiety, anger and agitation, problems interacting with management." (Tr. 46, 77). The Social Security Administration (SSA) denied her application initially and again upon reconsideration. (Tr. 46, 55-58). Morgan requested review and on January 21, 2005, appeared with counsel at a hearing before Administrative Law Judge (ALJ) Peter J. Baum. (Tr. 59, 967-90). The ALJ reopened Morgan's January application and considered the two applications together. (Tr. 22). In his decision, dated May 6, 2005, the ALJ found Morgan was not disabled. (Tr. 22-28). Morgan appealed, but the Appeals Council denied review making the decision of the ALJ the final decision of the Commissioner. (Tr. 7); 20 C.F.R. § 416.1481.

Morgan then filed the instant complaint in U.S. District Court appealing the Commissioner's final decision. *See* 20 C.F.R. § 422.210(a). She filed the instant motion for summary judgment on November 1, 2007. The Commissioner filed the instant cross-motion for summary judgment on November 17, 2007.

Claimant's Work History and Medical History

Morgan was 34 years old on the date of the ALJ's decision. (Tr. 969, 972). From 1988 to 2000, she worked as a ranch hand, an animal shelter tech, and a dancer. (Tr. 84). In July of 2000, she stopped working full time due to "depression, anxiety, and panic attacks." (Tr. 83).

In July of 1998, Morgan sought treatment from the Southern Arizona Mental Health Corporation (SAMHC). (Tr. 560-62). She reported anxiety, depression, and thoughts of suicide. *Id.* She was prescribed Prozac by T. Mayer, M.D. (Tr. 560, 549). Her diagnosis was listed as Axis I, primary 300.00 (anxiety disorder). (Tr. 543). Michelle T. McGeady assessed

1 Morgan's functional levels as follows: "role performance – slight dysfunction; interpersonal
2 relations – severe dysfunction; thinking/mental process – moderate dysfunction;
3 feeling/affect/mood – moderate dysfunction." *Id.*

4 In December of 2000, Morgan again sought treatment from the Southern Arizona Mental
5 Health Corporation (SAMHC). (Tr. 540). She reported depression. *Id.*

6 In September of 2001, Morgan again sought treatment from the Southern Arizona Mental
7 Health Corporation (SAMHC). (Tr. 527-532). D. Bromberg, MSW, recorded her diagnosis as
8 Axis I, primary 296.40 – Bipolar. (Tr. 531, 814, 820). Bromberg assessed Morgan's functional
9 levels as follows: "role performance – severe dysfunction; interpersonal relations – moderate
10 dysfunction; family/living environment – moderate dysfunction; feeling/affect/mood –
11 moderate dysfunction." (Tr. 531).

12 The record contains treatment notes from the Adaptive Living Institute beginning in May
13 of 2002 and extending to August of 2004. (Tr. 420-522). In November of 2002, Morgan's
14 friend reported Morgan "is as depressed as I've ever seen her. . . [she is] hoping to die." (Tr.
15 500). In April of 2003, Morgan was "chipper" and her mood was "elevated." (Tr. 483). In
16 June of 2003, Morgan reported a suicide attempt. (Tr. 471).

17 In June of 2003, Morgan was admitted to Kino Community Hospital following an
18 overdose. (Tr. 262). Although Morgan stated she did not believe the overdose would kill her,
19 she also stated she wanted to make it all "go away." (Tr. 264).

20 The record contains treatment notes from COPE Behavioral Services, Inc. beginning in
21 September of 2001 and extending to April of 2004. (Tr. 565-821). In September of 2001,
22 Morgan reported a diagnosis of bipolar, borderline, and OCD. (Tr. 810). She was taking
23 Serzone, Depakote, Klonopin, and Xanax. (Tr. 810). In September of 2001, Morgan reported
24 manic symptoms including "insomnia, impulse shopping, mood swings, racing thoughts and
25 [lowered] concentration." (Tr. 814). In the last week of November and the first week of
26 December of 2001, Morgan reported depression triggered by the death of a pet pig. (Tr. 796-
27 97). She was sleeping 18 hours a day. *Id.* (Tr. 797). By the second week of December,
28 Morgan reported decreased sleep and increased agitation. (Tr. 791, 793).

1 On February 25, 2002, Morgan reported she was starting work delivering popcorn. (Tr. 760). On March 6, 2002, she reported she lost her job because she could not concentrate and was "overwhelmed and confused." (Tr. 756).

In January of 2004, non-examining state agency psychologist, Paul Tangeman, Ph. D., reviewed the medical records and completed a Psychiatric Review Technique form. (Tr. 275-88). He assessed affective disorder and substance addiction disorder. *Id.* He opined Morgan was "moderately limited" in "maintaining concentration, persistence, or pace." *Id.* She was mildly limited in her "restriction on activities of daily living and difficulties in maintaining social functioning." *Id.* He noted no episodes of decompensation of extended duration. (Tr. 285).

Tangeman completed a Residual Functional Capacity Assessment. (Tr. 289-92). He found Morgan moderately limited in her "ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances," "ability to complete a normal workday and work week . . .," and "ability to interact appropriately with the general public, and the ability to respond appropriately to changes in the work setting." *Id.*

The record contains treatment notes from COPE Behavioral Services, Inc. beginning in April of 2004 and extending to February of 2005. (Tr. 885-921). In April of 2004, Morgan reported she "lost it" due to stress. (TR. 921). She broke some things in her apartment, and the police were called. *Id.*

In July of 2004, Virgil Hancock, M.D., Morgan's treating psychiatrist, reported Morgan was doing well. (Tr. 897). In November of 2004, Morgan's mood was mildly hypermanic. (Tr. 894). In December of 2004, Morgan complained of anxiety. (Tr. 893).

In December of 2004, Hancock completed a Mental Work Tolerance Recommendations form. (Tr. 829-31). He opined Morgan was "markedly limited" in her "ability to understand and remember detailed instructions;" "ability to carry out detailed instructions;" ability to maintain attention and concentration for extended periods;" "ability to perform activities within a schedule, maintain regular attendance, and be punctual;" "ability to sustain an ordinary routine without special supervision;" "ability to work in coordination with or proximity to

- 4 -

others without being distracted by them;" "ability to complete a workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without more than normal rest periods;" "ability to interact appropriately with the general public;" "ability to accept instructions and respond appropriately to criticism from supervisors;" "ability to get along with co-workers or peers without distracting them or exhibiting behavior extremes;" "ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness;" "ability to respond appropriately to changes in the work setting;" "ability to be aware of normal hazards and take appropriate precautions;" and the "ability to set realistic goals or make plans independently of others." (Tr. 830-31). He further opined she "could work for 0 hours per day, 0 days per week." *Id.*

In December of 2004, Hancock also completed a Psychiatric Review Technique form. (Tr. 832). He concluded Morgan meets listing 12.04/12.06 based on her affective disorder and anxiety-related disorder. (Tr. 832-845). She was markedly limited in her "restriction of activities of daily living." She was extremely limited in "maintaining social functioning," and "maintaining concentration persistence or pace." (Tr. 842). She has experienced four or more "episodes of decompensation, each of extended duration." *Id.*

At the hearing before the ALJ on January 21, 2005, Morgan explained she was first hospitalized at the age of 14 or 15 for cutting herself. (Tr. 979). "A couple years ago," she was hospitalized at Kino Hospital after a suicide attempt. *Id.* She sought treatment at SAMHC and would "walk in, and like, tell them that they had to help me because I was going to kill myself right there." *Id.* She sought treatment at Ocotillo when "I just broke. And just went to the knife right away. I just started just hacking at my arms . . . ." (Tr. 980).

She has difficulty getting along with people. (Tr. 981). She explained,

> No, not all of them, everywhere. Some of them, everywhere, which is a drag, because I feel like I want to be nice to everybody, but people don't like me. I mean, like, you know, they talk about me behind my back, and sometimes I get nervous . . . I look up and everybody's looking at me like I'm a freak, and I hate that. And I just get really angry and then – it makes me sad . . . . and I'm just really frustrated with the whole thing . . . I just don't fit in anywhere.

(Tr. 981-82). She has problems with anxiety, memory, and concentration. (Tr. 984, 986-87, 988).

In November of 2005, after the ALJ's decision, Hancock wrote a letter to Morgan's counsel summarizing her condition. (Tr. 932). Hancock wrote that Morgan's "condition is totally unpredictable; the nature of her bipolar disorder is such that some days she is able to function adequately to take care of herself (this does not mean that she is capable of working, but that she is able to attend her appointments and take care of her daily needs), but there are other days that she cannot even leave her house." (Tr. 932). "Further, she would likely decompensate quickly if she were in a work environment because from a psychiatric standpoint, her mental illness prevents her from being able to sustain the rigors of employment or be a reliable employee." *Id.*

### CLAIM EVALUATION

Social Security Administration (SSA) regulations require that disability claims be evaluated pursuant to a five-step sequential process. 20 C.F.R. §§ 404.1520, 416.920; *Baxter v. Sullivan,* 923 F.2d 1391, 1395 (9th Cir. 1991). The first step requires a determination of whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If so, then the claimant is not disabled, and benefits are denied. *Id.* If the claimant is not engaged in substantial gainful activity, the ALJ proceeds to step two which requires a determination of whether the claimant has a "medically severe impairment or combination of impairments." 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

In making a determination at step two, the ALJ uses medical evidence to consider whether the claimant's impairment more than minimally limits or restricts his or her "physical or mental ability to do basic work activities." *Id*. If the ALJ concludes the impairment is not severe, the claim is denied. *Id*. Upon a finding of severity, the ALJ proceeds to step three which requires a determination of whether the impairment meets or equals one of several listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); 20 C.F.R. Pt. 404, Subpt. P,

App.1. If the claimant's impairment meets or equals one of the listed impairments, then the claimant is presumed to be disabled, and no further inquiry is necessary. *Ramirez v Shalala,* 8 F.3d 1449, 1452 (9th Cir. 1993). If the claimant's impairment does not meet or equal a listed impairment, evaluation proceeds to the next step.

The fourth step requires the ALJ to consider whether the claimant has sufficient residual functional capacity[2] (RFC) to perform past work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the ALJ concludes the claimant has sufficient RFC, then the claim is denied. *Id*. If the claimant cannot perform any past work, then the ALJ must move to the fifth step which requires consideration of the claimant's RFC to perform other substantial gainful work in the national economy in view of claimant's age, education and work experience. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4).

The ALJ's Findings

At step one of the disability analysis, the ALJ found Morgan "has not engaged in substantial gainful activity since the alleged onset of disability." (Tr. 27). At step two, he found Morgan has severe impairments: "bipolar disorder and history of substance abuse." *Id.* At step three, the ALJ found Morgan's impairments did not meet or equal the criteria for any impairment found in the Listing of Impairments, Appendix 1, Subpart P, of 20 C.F.R., Part 404. *Id.* The ALJ then analyzed Morgan's residual functional capacity (RFC). (Tr. 27). He found she "has no exertional limitations." *Id.* "She is able to understand, carry out, and remember simple instructions with low social contact; deal with changes in a routine work setting; and sustain the pace and concentration required in an ordinary work setting on a reasonably sustained basis." *Id.* At step four, the ALJ found Morgan could perform her past relevant work as a ranch hand. (Tr. 28).

---

[2] Residual functional capacity is defined as that which an individual can still do despite his or her limitations. 20 C.F.R. §§ 404.1545, 416.945.

- 7 -

## STANDARD OF REVIEW

An individual is entitled to disability benefits if he or she demonstrates, through medically acceptable clinical or laboratory standards, an inability to engage in substantial gainful activity due to a physical or mental impairment that can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). "[A] claimant will be found disabled only if the impairment is so severe that, considering age, education, and work experience, that person cannot engage in any other kind of substantial gainful work which exists in the national economy." *Penny v. Sullivan,* 2 F.3d 953, 956 (9th Cir. 1993) (*quoting Marcia v. Sullivan,* 900 F.2d 172, 174 (9th Cir. 1990)).

To establish a *prima facie* case of disability, the claimant must demonstrate an inability to perform his or her former work. *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984). Once the claimant meets that burden, the Commissioner must come forward with substantial evidence establishing the claimant is not disabled. *Fife v. Heckler*, 767 F.2d 1427, 1429 (9th Cir. 1985).

The findings of the Commissioner are meant to be conclusive. 42 U.S.C. §§ 405(g), 1383(c)(3). The court may overturn the decision to deny benefits "only if it is not supported by substantial evidence or it is based on legal error." *Matney v. Sullivan,* 981 F.2d 1016, 1019 (9th Cir. 1992) (citations omitted). The Commissioner's determination that a claimant is not disabled must be upheld if the Commissioner applied the proper legal standards and the record as a whole contains substantial evidence to support the decision. *Clem v. Sullivan*, 894 F.2d 328, 330 (9th Cir. 1990) (citing *Desrosiers v. Secretary*, 846 F.2d 573, 575-76 (9th Cir. 1988); *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983)). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *Winans v. Bowen,* 853 F.2d 643, 644 (9th Cir. 1987). The standard is less than a "preponderance of the evidence" standard. *Matney,* 981 F.2d at 1019.

"[I]f the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney,* 981 F.2d at 1019 (citing *Richardson,* 402 U.S. at 400). When

applying the substantial evidence standard, however, the court should not mechanically accept the Commissioner's findings but should review the record critically and thoroughly. *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975). Reviewing courts must consider the evidence that supports as well as detracts from the Commissioner's conclusion. *Id.* A denial of benefits will be set aside if the Commissioner fails to apply proper legal standards in weighing the evidence even though the findings may be supported by substantial evidence. *Frost v. Barnhart*, 314 F.3d 359, 367 (9th Cir. 2002); *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978).

In evaluating evidence to determine whether a claimant is disabled, the opinion of a treating physician is entitled to great weight. *Ramirez v. Shalala,* 8 F.3d 1449, 1453-54 (9th Cir. 1993). The Commissioner may reject a treating physician's uncontradicted opinion only if he sets forth clear and convincing reasons for doing so. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995); *Magallanes v. Bowen,* 881 F.2d 747, 751 (9th Cir. 1989). If the treating physician's opinion is contradicted by another doctor, the Commissioner may reject that opinion only if he provides specific and legitimate reasons supported by substantial evidence in the record. *Lester,* 81 F.3d at 830. No distinction is drawn "between a medical opinion as to a physical condition and a medical opinion on the ultimate issue of disability." *Rodriguez v. Bowen*, 876 F.2d 759, 761 n.7 (9th Cir. 1989).

"The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a non[-]examining physician." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). "[T]he Commissioner must provide 'clear and convincing' reasons for rejecting the uncontradicted opinion of an examining physician." *Id.* "[T]he opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830-31.

"Where medical reports are inconclusive, questions of credibility and resolution of conflicts in the testimony are functions solely of the [Commissioner]." *Magallanes,* 881 F.2d at 751 (punctuation omitted). The Commissioner's finding that a claimant is less than credible,

however, must have some support in the record. *See Light v. Social Security Administration,* 119 F.3d 789 (9th Cir. 1997).

The ALJ need not accept the claimant's subjective testimony of disability, but if he decides to reject it, "[he] must provide specific, cogent reasons for the disbelief." *Lester,* 81 F.3d at 834. "Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." *Id.* "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.*

DISCUSSION

The decision of the ALJ should be set aside. He failed to give appropriate weight to the opinion of Morgan's treating physician, Virgil Hancock, M.D.

Hancock believes Morgan's affective disorder and anxiety related disorder are sufficiently severe to meet the Commissioner's listings at 12.04 and 12.06. *See* Listing of Impairments, Appendix 1, Subpart P, of 20 C.F.R., Part 404. Accordingly, he concludes she is disabled. Hancock's opinion, however, is contradicted by the opinion of the non-examining state agency psychologist who opined Morgan could perform "simple work related tasks with few socially stressful demands." (Tr. 24). The ALJ rejected Hancock's assessment and concluded, in agreement with the state agency psychologist, that Morgan retains the ability to "understand, carry out, and remember simple instructions with low social contact." (Tr. 27).

"Because treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual, their opinions are given greater weight than the opinions of other physicians." *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). Here, Hancock's opinion of disability is contradicted by the opinion of the non-examining state agency psychologist. If the treating physician's opinion is contradicted by another doctor[3], the

---

[3] The term "physician" includes psychologists and other health professionals who are not medical doctors. *Lester v. Chater*, 81 F.3d 821, 830 n.7 (9th Cir. 1995).

- 10 -

ALJ may reject that opinion only if he provides specific and legitimate reasons supported by substantial evidence in the record. *Lester,* 81 F.3d at 830. This he did not do.[4]

It appears the ALJ discounted Hancock's opinion of disability because he found it inconsistent with her reported Global Assessment of Functioning (GAF) scores. In his decision, the ALJ discussed Hancock's findings as follows:

> Dr. Hancock opined that the claimant's impairments met Listings 12.04 and 12.06 .... However, on that same day, the doctor reported that the claimant had a GAF score of 60, indicative of only moderate symptoms .... The undersigned finds that the doctor's opinion is without substantial support from the other evidence of record and inconsistent with his earlier reporting of the claimant's GAF score, which renders it less persuasive. ...
>
> \*   \*   \*
>
> The undersigned has considered the opinion by Dr. Hancock ... and has rejected it, as the doctor's opinion contrasts sharply with the other evidence in the record .... Moreover, the doctor's opinion does not comport with the claimant's statement ... and GAF scores ... documented by the same doctor. These GAF scores were documented from August 2003 to November 2004.

(Tr. 24, 26). The ALJ's criticism, however, does not take into consideration the nature of Morgan's mental illness.

Morgan has bipolar disorder. She experiences periods of depression followed by periods of elevated mood. As Hancock explained: "[Morgan's] condition is totally unpredictable; the nature of her bipolar disorder is such that some days she is able to function adequately to take care of herself . . ., but there are other days that she cannot even leave her house." (Tr. 932). "It is unpredictable and even though [Morgan] has been compliant with taking her medications and has been sober for some time now, her mental illness prevents her from being reliable even in caring for her daily needs." *Id.* "Further, she would likely decompensate quickly if she were in a work environment because from a psychiatric standpoint, her mental

---

[4] When the ALJ made his decision, he did not have Hancock's letter summarizing Morgan's condition and discussing her ability to work. (Tr. 932). This document, however, was submitted to the Appeal's Council, which concluded it would not materially affect the decision of the ALJ. *See* (Tr. 7). Accordingly, this court must analyze the decision of the ALJ as though he had access to the entire amended record. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1030 n.2 (9th Cir. 2007).

- 11 -

illness prevents her from being able to sustain the rigors of employment or be a reliable employee." *Id.*

Accordingly, Hancock's opinion that Morgan cannot work is not contradicted by his assessment that her GAF[5] score on that same day was 60 (assuming a person with a GAF score of 60 is able to work). At some times, Morgan functions comparatively well. At other times, she does not. When she is functioning well, she keeps her medical appointments and gets a high GAF score. When she is not functioning well, "she cannot even leave her house." (Tr. 932). The fact that Morgan was functioning well on one particular day does not mean she functions well all the time or would be able to "sustain the rigors of employment." *Id.* Hancock assessed Morgan's ability to work based on his observation of her mental illness over an extended period. *Id.* This is precisely the type of assessment a treating physician is best able to perform. Moreover, Hancock's opinion is supported by the medical record, which documents periods of depression followed by periods of elevated mood.

It is not clear why the ALJ believed Hancock's opinion "does not comport with the claimant's statement." *See* (Tr. 26). He may be referring to a comment Morgan made in her Psycho/Social Assessment that she "works well with people." (Tr. 24, 26, 297). Hancock's opinion however is not in contradiction with Morgan's assessment. As Morgan said at the hearing, she works well with *some* people. (Tr. 981-82). Unfortunate, whereever she goes, there are some people with whom she does not work well. *Id.* These people, in her words, "talk about me behind my back" and "look[] at me like I'm a freak." *Id.*

Someone who invariably finds people with whom she does not work well could fairly be described as "markedly limited" in her "ability to work in coordination with or proximity to others without being distracted by them," "ability to interact appropriately with the general public," "ability to accept instructions and respond appropriately to criticism from supervisors,"

---

[5] Global Assessment of Functioning (GAF) Scale: 60-51, "moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." <u>Diagnostic and Statistical Manual of Mental Disorders</u>, Fourth Edition, American Psychiatric Association, (1994), p. 32.

- 12 -

1 and "ability to get along with co-workers or peers without distracting them or exhibiting
2 behavior extremes." *See* (Tr. 829-31). Hancock's opinion of Morgan's condition is not
3 contradicted by Morgan's assessment of her abilities.

4     The ALJ failed to give appropriate weight to the opinion of Morgan's treating physician,
5 Hancock. "Where the Commissioner fails to provide adequate reasons for rejecting the opinion
6 of a treating or examining physician, we credit that opinion as a matter of law." *Lester v.*
7 *Chater*, 81 F.3d 821, 834 (9th Cir.1996). "Where we conclude that a claimant's testimony or
8 a doctor's opinion should have been credited and, if credited, would have led to a finding of
9 eligibility, we may order the payment of benefits." *Regennitter v. Commissioner*, 166 F.3d
10 1294, 1300 (9th Cir.1999); *See also Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.1990)
11 (remanding for payment of benefits where the Secretary did not provide adequate reasons for
12 disregarding examining physician's opinion); *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th
13 Cir.1989); *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir.1988).

14     In this case, the ALJ improperly discounted the opinions of Morgan's treating physician.
15 His opinion should be credited as a matter of law. Crediting this evidence indicates Morgan has
16 been disabled since November 20, 2000. *See* (Tr. 73); *Loza v. Apfel*, 219 F.3d 378, 394 (5th
17 Cir.2000) ("Factors relevant to the determination of the date of disability include the
18 individual's declaration of the date of when the disability began, work history and available
19 medical history."); *Swanson v. Secretary*, 763 F.2d 1061, 1066 n.2 (9th Cir.1985) (The
20 claimant's onset date should be adopted by the Commissioner if it is consistent with the
21 available evidence citing Social Security Ruling 83-20.); *Willbanks v. Secretary*, 847 F.2d 301,
22 304 (6th Cir.1988) (same). Remand of the case would serve no useful purpose. *See Benecke*
23 *v. Barnhart*, 379 F.3d 587, 595 (9th Cir.2004) ("Allowing the Commissioner to decide the issue
24 again would create an unfair 'heads we win; tails, let's play again' system of disability benefits
25 adjudication."); *Holohan v. Massanari* 246 F.3d 1195, 1210 (9th Cir. 2001); *Smolen v. Chater*,
26 80 F.3d 1273, 1292 (9th Cir.1996) ("We may direct an award of benefits where the record has
27 been fully developed and where further administrative proceedings would serve no useful
28 purpose."); *See also* SSR 96-2p ("If a treating source's medical opinion is well-supported and

- 13 -

not inconsistent with the other substantial evidence in the case record, it must be given controlling weight; i.e. it must be adopted."). A finding of disability should be entered.

RECOMMENDATION

For the foregoing reasons, the Magistrate Judge recommends that the District Court, after its independent review, grant the plaintiff's Motion for Summary Judgment, deny the defendant's Motion for Summary Judgment, and remand for payment of benefits. [#10, 12]

Pursuant to 28 U.S.C. § 636(b), any party may file and serve written objections within 10 days after being served with a copy of this Report and Recommendation. If objections are not timely filed, the party's right to de novo review may be waived. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc), *cert. denied*, 540 U.S. 900 (2003).

The Clerk of the Court is directed to send a copy of this Report and Recommendation to all parties.

DATED this 4th day of April, 2008.

_____
Glenda E. Edmonds
United States Magistrate Judge

- 14 -